UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,  :               S1 11 CR. 59 (LAK)

              Plaintiff,  :

          - against -  :

RIKELBY MELLA,  :

             Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT RIKELBY MELLA'S
## SENTENCING MEMORANDUM

John F. Kaley, Esq.
Doar Rieck Kaley & Mack
*Attorney for Rikelby Mella*
217 Broadway, Suite 707
New York, NY 10007
(212) 619-3730

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA, :   S1 11 CR. 59 (LAK)

    Plaintiff, :

   - against - :

RIKELBY MELLA, :

    Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT RIKELBY MELLA'S
## SENTENCING MEMORANDUM

### PRELIMINARY STATEMENT

Defendant Rikelby Mella respectfully submits this sentencing memorandum in support of his request for a non-Guidelines sentence. We ask that the Court exercise its sentencing discretion and impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a), which, in our respectful view, support a non-Guidelines sentence.

Mr. Mella was arrested on February 7, 2011; he has been on house arrest since February 18, 2011.

## I. BACKGROUND

On May, 20, 2011, Rikelby Mella pleaded guilty to the lesser included offenses of violations of 21 U.S.C. § 841(b)(1)(C) under Counts One and Two of Indictment S1 11 Cr. 59 (LAK) which had charged him with participating in a conspiracy to distribute 50 and 280 grams or more of crack in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The Pre-Sentencing Report

("PSR") reflects, pursuant to the parties' plea agreement, that Rikelby Mella's Guidelines should be calculated based on a drug type and quantity of at least 112 grams but less than 196 grams of crack. The PSR affords Mr. Mella a reduction of three-levels for acceptance of responsibility resulting in an adjusted offense level 25 and an advisory sentencing range of 57-71 months in Criminal History Category I. There is no mandatory minimum sentence and the Court is free to fashion a sentence which it deems just and fair under all of the circumstances as they relate to Rikelby Mella.

The parties' plea agreement allows Mr. Mella to seek a non-Guidelines sentence based on the factors set forth in 18 U.S.C. § 3553 (a). For Mr. Mella, who suffers from depression and is being medicated for that condition and has a history of drug use from the age of 14, we respectfully submit that a non-Guidelines sentence is appropriate for this 24 year old young man.

## II.   THE COURT SHOULD IMPOSE A NON-GUIDELINES SENTENCE

### A.   Introduction

The PSR has calculated an advisory Guidelines sentencing range of 57-71 months. In this case, however, given all the facts, a non-Guidelines sentence is sufficient but not greater then necessary to promote the goals of sentencing.

### A.   The Purposes Of Sentencing In This Case Are Satisfied By A Non-Guidelines Sentence

18 U.S.C.§ 3553(a) requires a court to impose a sentence that is reasonable, one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." Section 3553 (a)(2) states that such purposes are:

> A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

-2-

      B. to afford adequate deterrence to criminal conduct;

      C. to protect the public from further crimes of the defendant; and

      D. to provide the defendant with needed education or vocational training medical care, or other correctional treatment in the most effective manner.

These purposes in this case all would be satisfied by a non-Guidelines sentence.

As he will tell the Court at sentencing , and as he does in his letter to the Court, Rikelby Mella has struggled with drug use and depression. He accepts responsibility for his conduct and expresses his belief that he has learned his lesson in this case. His participation in the offense of conviction was the product of his drug use, his youthful immaturity and poor judgment. He needs to get on with his life. He needs drug and alcohol treatment and he recognizes that need. He realizes that what he did was wrong and that he has greatly harmed his family and himself and society in general. He is 24 years old and has learned his lesson, as reflected in his plea and in his letter to the Court. He has hopes and dreams for his future and needs help to get there. With drug and alcohol treatment, we think he can reach his hopes and translate hope into reality.

Further, with respect to the need for a sentence to afford adequate deterrence to criminal conduct, we are confident that the imposition of a non-Guidelines sentence and treatment will provide all the deterrence needed. We doubt that a harsh Guidelines sentence would have any bearing on deterrence and we are not aware of any empirical data establishing that it would. In fact, the data is to the contrary. There simply is no evidence that increases in sentence length reduce crime through deterrence.[1] "Three National Academy of Science panels, . . . reached that

---

[1] Of course, deterrence works in the sense that there is less crime with a criminal justice system then there would be without one. But the question here is one of "marginal deterrence," i.e., whether any particular quantum of punishment results in increased deterrence and thus less crime.

conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).[2] *See also* Andrew von Hirsch, et. al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).[3] The von Hirsch analysis, commissioned by the British Home Office, examined penalties in the United States and in several European countries. It concluded that the "correlations between sentencing severity and crime rates . . . were not sufficient to achieve statistical significance,"and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

The conclusion in this regard is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentencing consequences in the manner one might expect. *Tonry*, *supra*, at 28-29. "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al., *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005). We think that is even more so in cases such as this where the offenses have some genesis in immaturity, poor judgment, economic difficulties and in a person's own drug and alcohol use. This is not to sanction offenses by economically distressed people and drug users. Yet scholars have concluded that people generally do not consider in advance the consequences of their wrongdoing. However, to the extent a deterrent

---

[2] This article is available on Westlaw.

[3] A summary of the von Hirsch report is available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF.

-4-

effect is deemed necessary, that too, we believe, can be satisfied adequately by a non-Guidelines sentence in this case for this defendant.

### C.    Analysis of the 3553(a) Factors Strongly
###        Supports Imposition of a Non-Guidelines Sentence

18 U.S.C. § 3553(a) additionally directs a sentencing court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the guidelines sentencing range and policy statements, the need to avoid unwarranted sentencing disparities among defendants involved in similar conduct with similar criminal history, and the need to provide restitution to any victim(s) of the offense.

Further, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The directives of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), *United States v. Crosby*, 397, F. 3d. 103 (2d Cir. 2005), and 3553(a) make clear that courts must consider all of the factors in § 3553(a), many of which the Guidelines either reject or ignore, or demand to an "extraordinary" degree. Indeed, in some cases, the Guidelines clash outright with § 3553(a)'s primary directive: "to impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing.

As the Second Circuit observed in *United States v. Jones*, 531 F.3d 163, 182 (2d Cir. 2008):

> it is the district court's particular trust to ensure the "uniform and
> constant" principle of the federal sentencing tradition, specifically, that

-5-

> "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," [citing] *Koon v. United States*, 518 U.S. at 113.

*Jones*, at 182. To secure the objectives of § 3553, a district judge must fully exercise this proper sentencing authority. *See Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2463 (2007).

Finally, it has been observed that sentencing is not an exact science. Rather it is a "fluid and dynamic process." *Irizarry v. United States*, 128 S. Ct. 2198, 2203 (2008) (citing *United States v. Vega- Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (*en banc*)). It's aim should be to impose a sentence that is reasonable and fair and just given the facts of a particular case and the facts relative to the particular person being sentenced. The overarching goal is to fashion a sentence that is sufficient, but not greater than necessary. An analysis of the § 3553(a) factors in this case, to which we now turn, militates in favor of Rikelby Mella and the imposition of a non-Guidelines sentence.

### 1. The Nature And Circumstances Of The Offense

I am not unmindful of the fact that Rikelby Mella has pleaded guilty to a serious offense. Our point in this regard, however, is that a non-Guidelines sentence is sufficient in this case. In some mitigation, we point out that Mr. Mella's participation in the offense was fueled by his immaturity and by his own drug use and alcohol abuse. Many of the observations of the Hon. Jack B. Weinstein, United States District Judge for the Eastern District of New York, set forth in the Court's "Statement of Reasons Pursuant to 18 U.S.C. § 3553 (c)(2)" for imposing sentence, dated March 24, 2011 in *United States v. Damien Bannister, et al.*, Docket No. 10 Cr. 0053 (JBW), are applicable to this case. In that case Judge Weinstein cited the roots of poverty and

deprivation in certain communities, the high rate of unemployment, the difficult economic and social conditions, and the adverse health effects of living in these communities. Many of these factors are present in this case and merit the Court's consideration in determining a sentence for Mr. Mella. Moreover, Mr. Mella's participation in the offense was sporadic in the sense that he was absent from the neighborhood for considerable periods of time and he held jobs. He spent time in the Dominican Republic; he relocated to the Boston area. He just could not address successfully his own drug use and kept getting drawn back in the offense. He was a low-level street seller of small quantities of drugs largely to support his own use. He had no participation in any violent acts.

### 2. The History And Characteristics of Rikelby Mella

Rikelby Mella is 24 years old. He has had limited education through the 9th grade, has some employment skills, and has held jobs and been reliable. He was born into a life of some economic struggle. He never knew his biological father. When his mother and step-father divorced when he was nine, he felt alone. School was difficult for him. He was not promoted past the 9th grade and was sent to an "offsite" educational services center. In his own words to the Probation Officer, Ms. Jeffries, he was a "knucklehead." Yet, in the simple letter he submitted to the Court and in the letter from his cousin, copies of which are annexed hereto as Exhibit "A," he appears generally to be a decent person with a kind heart, who had problems, but who always was helpful to those around him. In his letter to the Court, he expresses his remorse for his conduct and for letting life get away from him. His letter and the letter from his cousin describe a part of Mr. Mella that one would not ordinarily see in him and reflects his current thoughtfulness and reflections on his own life with great sincerity.

-7-

In this regard, we also note that Mr. Mella's adjustment to house arrest and drug counselling has been good but not without occasional stumbles and struggles as is not uncommon for drug users and which undoubtedly are the product of immaturity and the mis-step of occasional marijuana use to combat his depression.  Nevertheless, he has made efforts which demonstrate a level of maturity and responsibility on his part and has caused him to reassess and reflect on his life in a way that he had not previously.

Finally, Mr. Mella, by his plea has accepted responsibility for his offense.  He recognizes that if he is to make any kind of life for himself he must be  productive and drug and alcohol free and he is committed to doing so.  He is amenable to drug treatment and he recognizes that he would benefit from treatment.

### 3.    The Kinds of Sentence Available

This consideration is not really a factor in this case.  A sentencing court must consider all of "the kinds of sentences available" by statute, §3553(a)(3), even if the "kinds of sentence . . . established [by] the Guidelines" permit or encourage only prison. *See Gall v. United States*, 552 U.S. 38, 59, 128 S.Ct. 586, 602 & n.11 (2007).  Here, Rikelby Mella was in custody for slightly more than two weeks.  He has been on house arrest for just about one year.  There is no mandatory minimum and we ask the Court to impose a non-Guidelines sentence.

### 4.    The Guidelines Sentencing Range And Guidelines Policy Statements

The Supreme Court's decision in *Booker/Fanfan* requires sentencing courts to treat the Guidelines as one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).  As the Supreme Court held, the now revised Sentencing Reform Act ("SRA") requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits

-8-

the court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a). *Booker*,

543 U.S. at 245, 125 S. Ct. at 757.

Our view further is that the Guidelines are entitled to weight no greater than that afforded

to the other factors listed in § 3553(a). Any approach that automatically gives "heavy" weight to

the Guidelines range comes perilously close to the mandatory regime found to be

unconstitutionally infirm in *Booker*.

Judge Scalia explained this point in his dissent from *Booker's* remedial holding:

> [L]ogic compels the conclusion that the sentencing judge, after
> considering the recited factors (including the [G]uidelines), has full
> discretion, as full as what he possessed before the Act was passed, to
> sentence anywhere within the statutory range. If the majority thought
> otherwise - if it thought the Guidelines not only had to be 'considered' (as
> the amputated statute requires) but had generally to be followed - its
> opinion would surely say so.

*Booker*, 543 U.S. at 305-06, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the

remedial majority thought that the Guidelines range had to be given "heavy weight," its opinion

would have said so. The remedial majority clearly understood that giving any special weight to

the Guidelines range relative to the other Section 3553(a) factors would violate the Sixth

Amendment. As Justice Scalia observed in his concurring opinion in *Kimbrough v. United*

*States*, 552 U.S. 85, 113, 128 S. Ct. 558, 577 (2007), there can be no "thumb on the scales" in

favor of Guidelines sentences. There is no presumption as to the reasonableness of the

Guidelines sentencing ranges. *See Gall*, 128 S. Ct. 596-97. *See also Nelson v. United States*, 555

U.S. 350, 351, 129 S.Ct. 890 (2009). As such, in each case a court must make an "individualized

assessment" of the appropriate sentence "based on the facts presented" and the factors detailed in

§ 3553(a). *Kimbrough*, 552 U.S. at 114, 128 S.Ct. at 577. *See also Simon v. United States*, 361

F. Supp. 2d 35, 40 (E.D.N.Y. 2005) (Sifton, J.) (the "Guidelines are advisory and entitled to the

same weight accorded to each other factor that the Court is instructed to consider by §355

3(a.)."). Additionally, judges "may vary [from the Guidelines ranges] based solely on policy

considerations, including, disagreements with the Guidelines," *Kimbrough*, 552 U.S. at 101-02,

128 S. Ct. at 570 (internal quotations marks omitted). *See also Pepper v. United States*, 131

S.Ct. 380 (2011); *Spears v. United States*, 555 U.S. 261, 264-67, 129 S. Ct. 840, 843-44 (2009).[4]

Although it does not appear that Guideline 2.D1.1 was based on any congressional directive,

even were it to have been so derived courts are free to disagree with any of the guidelines,

including guidelines that do emanate from congressional actions. *See United States v. Cavera*,

550 F.3d 180 (2d Cir. 2009)(*en banc*), *cert. denied*, 129 S. Ct. 2735 (2009). *See also United*

---

[4] The court's ability to impose a non-guideline sentence based solely on a policy disagreement with a guideline itself applies to all guidelines not just the crack guidelines at issue in *Kimbrough* and *Spears*. *See Cunningham v. California*, 549 U.S. 270 (2007), where the Court recognized that the ability of judges to sentence outside the guideline range based solely on general policy objectives, without any fact finding anchor, is necessary to avoid a Sixth Amendment violation. *Id.* at 279-81. In *Rita,* the Court held that because guidelines may not be presumed reasonable at sentencing, sentencing judges are permitted to find that the guidelines sentence itself fails properly to reflect § 3553(a) considerations, that the guidelines reflect an unsound judgment, or that the guidelines do not generally treat certain defendant characteristics in the proper way. 551 U.S. at 350-51, 356, 127 S.Ct. 2465, 2468. In *Kimbrough*, the Court reiterated that a district judge may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps the case warrants a different sentence regardless," 552 U.S. at 570, 128 S.Ct. at 102, quoting *Rita*, 551 U.S. at 351, 127 S. Ct. at 2465, and, thus, "courts may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines." 552 U.S. at 570, 128 S.Ct. at 102. While *Kimbrough* and *Gall* referred to the drug guidelines generally as not having been based on empirical data, *see Kimbrough*, 552 U.S. at 109-10, 128 S.Ct. at 575; *Gall*, 552 U.S. at 594, 128 S.Ct. at 594 n.2, *Rita* made clear that judges may disagree with any guideline. *See* 551 U.S. at 350-51, 356, 127 S.Ct. at 2465, 2468. Indeed sentencing courts must be free to disagree with the guidelines on the basis of policy so that judges can play their role in providing information to the Sentencing Commission so that "the Guidelines [can] constructively evolve over time." *Rita*, 551 U.S. at 358, 127 S.Ct. at 2469.

-10-

*States v. Seval*, 2008 WL 4376826 (2d Cir. Sept. 25, 2008); *United States v. Parris*, *supra*, 573 F. Supp. 2d at 751.

In sum, as noted previously, in every case, a sentencing court must now consider all of the Section 3553(a) factors, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing, and a sentencing judge "is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all circumstances." *Jones*, 460 F.3d at 195. Further, as one district judge has noted, "the Guidelines may be tempered by compassion." *United States v. Kloda*, 133 F. Supp. 2d 345, 349 (S.D.N.Y. 2001) (Hellerstein, J.).

Here, in our view, Mr. Mella's advisory sentencing guidelines range set out in the PSR is disproportionate to the offense. Given that Mr. Mella was not a major player, was not part of the violence, had no stake in the overall drug activity, was a low-level street seller, received little remuneration and was a user himself, absented himself from the conspiracy for considerable periods of time and held some jobs for periods of time, we submit that the PSR's recommendation is overly harsh and fails to account adequately for the factors enumerated in 18 U.S.C. § 3553(a).

### 5.    The Need to Avoid Sentencing Disparities

Imposition of a non-Guidelines sentence in this case will not create any sentencing disparities, either nationally or locally.

First we note that the Guidelines themselves, without any empirical data, adopt a somewhat arithmetic approach to drug quantity and "in an effort to appear 'objective' tend to place great weight on putatively measurable quantities, without, however, explaining why it is

-11-

appropriate to accord such huge weight to such factors." *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998). As for the Guidelines, at least since *Booker* (and probably before), Courts have recognized the disjunct between sentences prescribed under the Guidelines and the requirement of 18 U.S.C. § 3553(a) that judges impose sentences "sufficient, but not greater than necessary," to comply with that section's objectives.

Second, we suggest that a non-Guidelines sentence for Mr. Mella on the facts relevant to him would not be inconsistent with or create a disparity in relation to other sentences imposed in this or in other cases, which the Court may and ought to consider. *See United States v. Flores*, 447 F3d 145, 157 (2d Cir. 2006).

Third, the Guidelines' treatment of "crack" cocaine as compared to powder cocaine, while ameliorated somewhat by the recent Guidelines amendments, itself creates an unwarranted disparity. Were a 1 to 1 ratio to be applied here, which we think is appropriate, Mr. Mella's Guidelines would be considerably less. For a quantity of between 100 and 200 grams of powder cocaine, Mr. Mella would start at an offense level 18, and, with a three-level reduction for acceptance of responsibility, have an adjusted offense level 15 in Criminal History Category I and an advisory Guidelines sentencing range of 18-24 months. In our respectful view, there is no sound reason for this disparity and under *Kimbrough, Spears* and *Cunningham*, the Court has the ability to come to that conclusion. *See* n.4 *supra* and accompanying text.

## 6.     The Need To Provide Restitution

The need to provide some amount of restitution is not a factor in this case.

-12-

7.    **Reflecting The Seriousness Of The Offense, Promoting Respect For The Law, Providing Just Punishment, Deterring Criminal Conduct, Protecting The Public, And Providing Vocational Training**

18. U.S.C. § 3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training. All of these sentencing objectives can be attained by imposing a non-Guidelines sentence.

Rikelby Mella has redeeming qualities. He is a young man who has made mistakes, yet a non-Guidelines sentence will afford him sufficient opportunities to address his drug and alcohol use and give him educational opportunities and vocational training which he needs and nourish his hope of being a productive person.

Consideration of all of the factors contained in 18 U.S.C. § 3553(a), we submit, warrants imposition of a non-Guidelines sentence for Mr. Mella. The profile of this young offender, given all of the circumstances relative to him, his life, his offense conduct, his drug use and limited education and his heartfelt and admirable expressions of remorse and his hopes for the future all militate in favor of a non-Guidelines sentence.

## CONCLUSION

For all of the foregoing reasons, we respectfully submit that the Court should impose a

non-Guidelines sentence.[5]

Dated: February 3, 2012
   New York, New York

         Doar Rieck Kaley & Mack

      By:  _____

        John F. Kaley (JK: 3598)
        217 Broadway, Suite 707
        New York, New York 10007
        Tel: (212) 619-3730
        *Attorney for Rikelby Mella*


To:  Parvin Moyne, Esq.
   Todd Blanche, Esq.
   Assistant United States Attorneys
   (Via ECF filing and e-mail)

   Ms. Jill Jeffries
   U.S. Probation Officer
   500 Pearl Street
   New York, NY 10007
   (Via ECF filing and e-mail)

---

[5] I wish to acknowledge and to thank the Federal Defender Services Organization for the many sentencing analyses and memoranda authored by them and provided to members of the CJA panel. Their work was thorough, authoritative and helpful in the preparation of this memorandum.